8thIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM RICE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 20-2404 |
| | : | |
| CITY OF PHILADELPHIA et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                                   July _8th_, 2021

Presently before the Court are Plaintiff Kareem Rice's Complaint (ECF 1), Defendants City of Philadelphia and several law enforcement officers'[1] (together the "City Defendants") Motion to Dismiss (ECF 2), Plaintiff's Motion for Extension of Time to File Response to the Motion to Dismiss (ECF 4), Plaintiff's Amended Complaint (ECF 5), Defendants A.T. Chadwick Company Inc., A.T. Chadwick, LLC, and Thomas Walls' (together the "Chadwick Corp. Defendants") Motion to Dismiss and Memorandum in Support (ECFs 9,10), Plaintiff's Motion for Extension of Time to File Response with accompanying letter (ECFs 12, 13), Defendants Jimmy Kratz, Richard Lipinski, Fran Spause and Vincent Fitzgerald's (together the "Project Management Defendants") Motion to Dismiss (ECF 23), and Plaintiff's Response in Opposition (ECF 24).

---

[1] Officer Melissa O'Leary, Detective Sharon Murphy, Detective John Frei, Detective Robert Kerwin, Lieutenant Anthony LaSalle, Officer Zachary Raymond, Sergeant Angel Gonzalez, Officer Michael Sowell, Officer Jonathan Dedos, and Sergeant Steven Vano.

Upon careful consideration of the Parties' submissions and exhibits, and for the reasons outlined below, Counts I, II, and II are dismissed with prejudice as to the City Defendants and Chadwick Cop. Defendants.

For the Project Management Defendants, Count I is dismissed with prejudice and Counts II and III are dismissed *without* prejudice. Plaintiff will have thirty (30) days from the date of this Memorandum and accompanying order to amend his pleadings as to Counts II and III against the Project Management Defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff Kareem Rice is an adult African American, Muslim man. In February 2018, Plaintiff was working as a contractor in Pennsylvania on a construction project for L.F. Driscoll Company, LLC ("Driscoll"). The project was managed by employees working for Defendant A.T. Chadwick Company, Inc., also known as A.T. Chadwick LLC ("Chadwick").

On this particular project, Plaintiff was one of two African American employees working on site. The foreman for the project was a man named Jimmy Kratz.[3] Approximately a week into Plaintiff's employment on this project, Kratz inquired about Plaintiff's pants. Specifically, he wanted to know why Plaintiff wore his pants above his ankles. Plaintiff informed Kratz that it was because according to Muslim customs, Plaintiff dressed modestly and wore clothing that remained clean and did not touch the ground.

Following this conversation with supervisor Kratz, Plaintiff began to experience a hostile work environment. For instance, Kratz—who is white—began to assign Plaintiff harder jobs than that of Plaintiff's white counterparts. Kratz also held Plaintiff at the end of his shift without

---

[2] This section draws primarily from Plaintiff's First Amended Complaint (ECF 5).
[3] Notably, Kratz is not identified as a defendant in the "Parties" section of both Plaintiff's original complaint (ECF 1) and his Amended Complaint (ECF 5).

cause, making him miss public transportation—something Kratz never did before he told Kratz that he was Muslim. Further, during the first week, Kratz allowed Plaintiff to work overtime. However, after the conversation about Muslim customs, Kratz refused to grant Plaintiff overtime work until "a superintendent overruled Kratz and forced Kratz to give Plaintiff overtime because the project was coming to an end and manpower was needed to complete the project." Am. Compl. ¶ 17. In another hostile moment, Kratz asked Plaintiff whether he had been praying. Plaintiff explained that he had been during his lunch break so, Kratz "decided it was ok but only because it was during Plaintiff's break." *Id*. ¶ 18.

The only other African American employee on the project was also allegedly treated worse than their white counterparts. For instance, this employee was given the night shift, which is far less desirable than the day shift. And, despite being a Driscoll employee for fourteen (14) years, the other African American employee was never promoted to the foreman position. Other Caucasian workers with less seniority—such as Kratz—were promoted.

Another example of Kratz's abuse was an incident in which Plaintiff overheard Kratz tell an Italian worker named Angelo that Kratz would be replacing Angelo because Kratz wanted to "get rid of this lazy wop"—using a derogatory slur referring to Angelo's' Italian ancestry. *Id*. ¶ 20. Kratz also used a slur against Plaintiff when again speaking with Angelo; Kratz said that he was "going to get rid of this nigger." *Id*. ¶ 21. Plaintiff was terminated a few weeks later due to what he claims was a scheme to have him fired.

As a general practice on this project, "several of Plaintiff's supervisors allowed Caucasian workers to load up their trucks with scrap metal in broad daylight. This practice was well-known and permissible." *Id*. ¶ 23. However, there is "no [official] policy regarding employees scrapping metal at the projects." *Id*. ¶ 24. On February 12, 2018, Kratz called

Chadwick employee and project manager Defendant Thomas Walls, to "advise him that copper was missing from a storage area where copper piping was kept." Am. Compl. ¶ 25. During this call, Kratz recommended that Walls "set up a camera in the storage room where the copper was kept," presumably to catch the supposed theft. *Id.* ¶ 26.

On February 16, 2018, Kratz had the cameras set up in the room. That same day, Kratz told Plaintiff and the other African American employee that they could go to the storage area and take any scrap metal from there that they wanted. Subsequently, Plaintiff and the other employee were recorded on camera taking metal from the storage room.

On Monday, February 19, 2018, when Plaintiff arrived to work, he was questioned by the project foreman, Defendant Richard Lipinski. During the questioning, Lipinski asked if Plaintiff took scrap metal from the storage room—Plaintiff admitted that he had with Kratz's permission. Plaintiff was then terminated and escorted off of the property. The other African American employee, who was also told he could take metal, was terminated as well. Later, the supposed theft was reported to the Philadelphia Police Department ("PPD"). In its initial report, taken the day Plaintiff was terminated, PPD noted that Plaintiff was captured on video taking large amounts of copper from the premises. "Lipinski knew, but did not tell [Defendant, Officer Melissa] O'Leary [or any other investigators] that Plaintiff had permission to remove the copper." *Id.* ¶ 34. The investigating officers, including Detective Sharon Murphy,[4] did not inquire as to whether Plaintiff had been permitted to take the scrap metal.

"In or around the beginning of March 2018, Plaintiff was informed that there was a warrant out for his arrest relating to the alleged copper theft from the project site." *Id.* ¶ 37. Plaintiff turned himself into the police and was later released on bail. On January 23, 2019,

---

[4] The PPD, Officer O'Leary, Detective Murphy and all other City Defendants are named as defendants in Plaintiff's original complaint (ECF 1); however, all are absent from the Amended Complaint's description of the parties.

4

Plaintiff was acquitted of all charges against him. Plaintiff believes that he was "set up by Kratz because of his race and/or his dislike for him." Am. Compl. ¶ 40. Further, Plaintiff alleges that "Lipinski, Kratz, [Driscoll employee Fran] Spause, and [Driscoll employee Vincent] Fitzgerald all knew that Plaintiff did not commit any theft but provided false information to the police that Plaintiff took scrap metal without permission." *Id.* ¶ 41.

As a result of Plaintiff's termination, arrest, and acquittal, Plaintiff was forced to pay attorney's fees and costs to defend his case, his career and livelihood were impacted, and he suffered emotional distress and significant financial harm.

\*\*\*

*Pennsylvania Court of Common Pleas*

In January 2020, Plaintiff filed Writ of Summons in the Philadelphia Court of Commons Pleas. On April 20, 2020, Plaintiff filed a complaint in the same court, naming the following entities and individuals as defendants: The City Defendants, the Chadwick Corp. Defendants, and the Project Management Defendants.[5]

*Removal to District Court*

On May 22, 2020, this case was removed to the Eastern District of Pennsylvania. (ECF 1). On May 28, 2020, the City Defendants filed the first Motion to Dismiss Plaintiff's Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF 2). Plaintiff filed a Motion for Extension of Time to File a Response to the motion to dismiss. (ECF 4).

Then, on July 1, 2020, Plaintiff filed an Amended Complaint against "all defendants." ECF 5. However, within this Amended Complaint, only the following parties are listed in either

---

[5] The names listed in the Plaintiff's case caption are not consistent with those parties identified and described in the Complaint (ECF 1)—all are included here for ease of reference. Most notably, a key party, Jimmy Kratz, is specified in the caption of the fist complaint, but is not described as party within the body of the complaint, nor is he described as a defendant in the Amended Complaint (ECF 5).

5

caption and/or party subsection as Defendants: the Chadwick Corp. Defendants, L.F. Driscoll Co., LLC ("Driscoll"); and Driscoll employees Jimmy Kratz, Richard Lipinski, Fran Spause, and Vincent Fitzgerald. Notably, the City Defendants are not listed.

On July 17, 2020, the Chadwick Corp. Defendants jointly filed their own 12(b)(6) Motion to Dismiss. (ECF 9). In response, the Plaintiff filed a Motion for Extension of Time to Amend, ECF 12, as well as a letter in support of his request. (ECF 13).

Finally, on October 9, 2020, Vincent Fitzgerald, Jimmy Kratz, Richard Lipinski, and Fran Spause filed their 12(b)(6) Motion to Dismiss. (ECF 23). And, Plaintiff filed a Response in Opposition to their motion. (ECF 24).

## II. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (*citations and quotations omitted*). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. Furher, facial plausibility cannot be established by mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id*. at 234 (quoting *Twombly*, 550 U.S. at 556). Otherwise, a motion for dismiss will be granted.

## III. DISCUSSION

Plaintiff has filed two complaints to this Court claiming that he experienced unlawful racial discrimination during his work as a contractor. However, even when both complaints are viewed in the most favorable light, major deficiencies remain. It appears that in an effort to hold accountable any and all persons or entities even tangentially related to the incidents described above, Plaintiff's claims have turned into a tangled knot—ranging from outlandish to plausible, but procedurally flawed.

In his first complaint, Plaintiff brought two counts: (I) Malicious Prosecution/False Arrest/Wrongful Imprisonment; and (II) Monell. *See* Compl. at 1. Plaintiff's Motion for Extension of Time to Amend (and his first amended complaint) had not been ruled on by this court prior to the publishing of this Memorandum. However, his request to amend is now granted and thus, the court will primarily focus on the three counts in Plaintiff's amended complaint[6]: (I) Malicious Prosecution/False Arrest/False Imprisonment and Analogous Pennsylvania State Law; (II) Violations of 42 U.S.C. §1981 (Racial Discrimination); and (III) Violations of 42 U.S.C. §1985 (Civil Conspiracy). *See* Amend. Compl. at 5.

For the following reasons, this court determines that all counts will be dismissed against all defendants. However, Plaintiff will be provided the opportunity to amend his pleadings to remedy the deficiencies as described herein.

In the name of clarity, the court will discuss the issues by grouping defendants according to the filing of their joint motions to dismiss.

---

[6] Again, this court must emphasize that while the Amended Complaint is now controlling, some Defendants were not listed or described as parties in the Amended Complaint. As such, reference to the first complaint will be required for analysis.

## A. Plaintiff Failed to Sufficiently Plead as to the City Defendants

The deficiencies in Plaintiff's claims against the entities and individuals that comprise the City Defendants cannot be cured.[7] The unexplained absence of the City Defendants as defined parties in the Amended Complaint makes this court strongly inclined to dismiss all counts against the City Defendants on those grounds alone. Nonetheless, Plaintiff has not pled facts that support a cause of action against the City Defendants.

To start, in Plaintiff's original complaint he named the Philadelphia Police Department ("PPD") as a defendant; this is impermissible. As detailed by the City Defendants, "[a]s a matter of law, and pursuant to § 16257, the Philadelphia Police Department is not a legal entity that can be sued." *See* City Def. Mot. to Dis. at 3.

Further, Plaintiff's claims against the City of Philadelphia fail. In Count I of his initial complaint, Plaintiff alleges that unspecified Defendants violated his "Fourth and Fourteenth Amendment" rights under the U.S. Constitution by "failing to properly investigate the conduct giving rise to their arrests." Compl. at ¶¶ 51-52. Count II is merely described as "Monell." *See Id.* at 14. Plaintiff does not define in his complaint the elements of his claims. Rather, he superficially lists the ways in which he was harmed and then makes broad legal conclusions.

Under 42 U.S.C. § 1983, a plaintiff must allege that (1) a constitutionally-protected right has been violated and (2) the alleged violation resulted from a municipal policy, custom, or practice of deliberate indifference to the rights of citizens. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978). However, a municipality such as the City of Philadelphia, "may not be sued under § 1983 for injury inflicted solely by its employees or

---

[7] Although this court grants Plaintiff's request to amend his first complaint, and therefore, primarily refers to the controlling Amended Complaint in its analysis, for this subsection the court will focus on the original complaint for two main reasons: (1) Plaintiff did not list the City Defendants in his amended pleading and (2) the City Defendants filed their Motion to Dismiss in response to the original complaint.

8

agents." *Id*. at 694. Plaintiff's only factual allegations against the City Defendants relate to alleged missteps in the investigation conducted by individual officers—no policy, custom, or practice is ever mentioned. Nor does Plaintiff contend that a municipal decisionmaker was responsible for his supposed mistreatment. *See Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (explaining that policies occur when a decisionmaker with final authority "issues an official proclamation, policy or edict" and customs exist only when practices are "so permanent and well-settled as to virtually constitute law."). Therefore, the claims against the city of Philadelphia have no merit.

Plaintiff claims that PPD's investigation into the suspected copper theft was unjustified and improper. Specifically, he claims that his constitutional rights were violated because he "had not committed any infraction to legally justify the incarceration and/or charges" brought against him. Compl. at ¶ 49. But, the Plaintiff's averments do not support this claim. The PPD was only involved in the investigation after a report of theft was filed.[8] During their investigation, Police were informed that a terminated employee had confessed to the theft, and were told that there was corroborating video evidence of said employee removing materials from the storage facility. Even if Plaintiff had a valid defense for this allegation, it does not mean that police cannot execute a warrant for his arrest based on the information lawfully collected during their investigation. Plaintiff's perceived inadequacy of the investigation is simply not a constitutionally protected right. *See Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (internal citation omitted) (declining to recognize a cause of action under the Fourteenth Amendment for failing to conduct a constitutionally adequate investigation).

---

[8] Signaling the superficiality of the claims broadly, Plaintiff does not provide information about who specifically called the police in this matter. *See* Compl. at ¶ 35 ("The alleged theft of copper was reported to the Philadelphia Police Department.")

9

Plaintiff claims against the individua law enforcement agents cannot survive this motion to dismiss without demonstrating their personal involvement in the violation of his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The City Defendants argue that Plaintiff's allegations against the named individuals are vague and lacking in particularity. *See* City Def. Mot. to Dis. at 7. This court agrees. Plaintiff does not identify in his factual pleadings what specific violations the individuals committed against him, because in his pleadings Plaintiff hardly mentions how or *if* these specific people were involved in the investigation or his arrest.[9] Plaintiff does not identify who issued the warrant against him, who arrested him, or how any of the decisions were made. Instead, Plaintiff makes conclusory statements that "Defendants" violated his rights, while acting "under the color of state law" Compl. at ¶ 57—this is wholly unsupported by evidence.

As such, all claims against the City Defendants are dismissed with prejudice.

**B. Plaintiff Failed to Sufficiently Plead as to the Chadwick Corp. Defendants**

Unlike the City Defendants, the Chadwick Corp. Defendants were referenced in the Amended Complaint. Nonetheless, Plaintiff fails to show that he has valid claims against the Chadwick Corp. Defendants. Plaintiff failed to identify which of the defendants committed each of the alleged offenses in his three counts. Therefore, this court will review each claim as against the Chadwick Corp. Defendants.

*1. Count I – The Chadwick Corp. Defendants Are Not State Actors*

As the Chadwick Corp. Defendants explain fully in their Motion to Dismiss, ECF 9 at 6, only a state actor can violate an individual's rights under the Fourth and Fourteenth Amendment.

---

[9] While Plaintiff does mention that Officer Murphy was involved in the interviewing stage, he does not describe any direct involvement with Murphy or imply Murphy's control over the investigation or her mindset during the investigation.

[10] *See United States v. Jacobsen*, 466 U.S. 109, 114-15 (1984) (Fourth Amendment violation requires a showing of state action). While there are exceptions that allow for private entities to be deemed state actors in certain circumstances, Plaintiff does not allege that any of the Chadwick Corp. Defendants are state actors, and factual inference cannot make this allegation plausible; so, the claim fails immediately.

### 2. Count II – The Facts Do Not Show Racial Discrimination by the Chadwick Corp. Defendants

The allegations also do not support a claim of racial discrimination. A claim under § 1981 requires a plaintiff to establish that (1) he is a racial minority (2) the defendant had an intent to discriminate on the basis of race, and (3) the discrimination concerns one of the enumerated activities as listed within § 1981. *Cummings v. Citizens Bank*, No. 07-1164, 2008 WL 53272, at *2 (E.D. Pa. Jan. 3, 2008). While Plaintiff has sufficiently alleged that he is a member of a racial minority group, he fails to show how any of the Chadwick Corp. Defendants had an intent to discriminate against him on the basis of race.

Plaintiff's allegations focus primarily on the acts of his supervisor, Jimmy Kratz. While his allegations demonstrate that Kratz's behavior may have been racially motivated and interfered with his ability to work as contracted on the project site, Plaintiff fails to provide any evidence that the Chadwick or Driscoll company representatives had knowledge of these behaviors—*i.e.,* he fails to demonstrate that they had an intent to discriminate against him or others like him on the basis of race. [11]

---

[10] Although the standard for liability in a *Monell* claim can be applied against private corporations, Plaintiff does not assert a *Monell* violation in his Amended Complaint, ECF 5—therefore, the court will not address it merits here.
[11] Notably, Driscoll is not one of the moving Defendants in any of the three motions to dismiss because the company was not originally listed (in case caption or in the "parties" subsection) of the first complaint, but is listed as a defendant in the Amended Complaint, ECF 5.

For example, Plaintiff describes the first step in what he says was a set up to have Plaintiff terminated. In this step, Plaintiff alleges that Kratz had cameras installed so that he could capture Plaintiff and another African American employee permissibly taking copper from the storage room. Then, Kratz would use the footage to have Plaintiff terminated and arrested. However, Plaintiff's claim that Chadwick as an entity or its representatives individually had similar intentions of getting rid of Plaintiff fall short. Here, Plaintiff attempts to plead that Chadwick employee Thomas Walls was unlawfully involved:

> "On or around the week of February 12, 2018 Kratz made a phone call to Thomas Walls, Project Manager, and advised him that copper was missing from a storage area where copper piping was kept.
>
> Upon information and belief, Kratz advised Walls that he would set up a camera in the storage room where the copper was kept.
>
> On or about February 16, 2018, Kratz had cameras set up in the storage room."
>
> Amend. Compl. at ¶¶ 25-27.

Plaintiff relies heavily on the fact that the company installed security cameras—at the direction of Kratz—as a clear link that all of the Chadwick Corp. Defendants (and Driscoll representatives) were engaged in discriminatory behavior. Yet, even in his averments, Plaintiff fails to indicate whether Walls or others had knowledge that the installation was meant to discriminatorily trap Plaintiff or any other racial minorities. Further, it is not clear from the pleadings that Walls or anyone else gave Kratz permission to allow employees of any race to take copper or install the surveillance equipment. Even with strong inferences made, there are no allegations that any specific person besides Kratz, or any company policy, supported this alleged scheme to terminate and implicate Plaintiff and/or African Americans in theft charges.

### 3. *Count III – The Facts Do Not Show Civil Conspiracy*

Plaintiff's allegations fail to show a § 1985 Civil Conspiracy against the Chadwick Corp. Defendants due to similarly scant details on the record. To demonstrate the elements for a § 1985 claim, a plaintiff must show: (1) a conspiracy, (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or deprivation of any right or privilege of a citizen of the United States. *Startzell v. City of Philadelphia*, 2007 WL 172400 (E.D. Pa. 2008).

Here, Plaintiff fails to allege with specificity, how any of the Chadwick Corp. Defendants were in alignment with Kratz's racially motivated actions; in other words, he does not show an actual conspiracy. Instead, he explains that various representatives—of Chadwick and Driscoll—were made aware of a theft issue (*i.e.,* that copper piping had gone missing), and were shown evidence that plaintiff was at least partially responsible (*i.e.,* he was captured taking materials on the security camera and he admitted to taking the materials). Even with substantial inferences taken, Plaintiff has not pled any facts to show that any specific person, other than Kratz and the other African American employee, would have known that Plaintiff was permitted to take the copper. Plaintiff alleges that Caucasian workers were permitted to take scrapping metal home but he does explain who authorized or was aware of this racially differentiated treatment. Plaintiff does not say which supervisors allowed his white counterparts to take materials, nor does he explain whether the Chadwick Corp. Defendants even knew that this unspoken rule existed. In fact, he alleges that to his knowledge, there is "no policy regarding employees scrapping metal at the project site." ECF 5 at ¶ 24. Therefore, no "act in furtherance" of the alleged conspiracy exists.

Indeed, Plaintiff presents evidence that others intervened to stop—rather than conspired to facilitate—Kratz's potentially unlawful behavior. In his pleadings, Plaintiff describes a stretch of time where Kratz kept Plaintiff from overtime. Plaintiff said that it only stopped when "a superintendent overruled Kratz and forced Kratz to give Plaintiff overtime because the project was coming to an end and manpower was needed to complete the project." Amend. Compl. at ¶ 17. Accordingly, the actions surrounding Plaintiff's work on and termination from the project cannot be inferred to create a conspiracy between and amongst Kratz and other representatives of the Chadwick corporations.

All counts against the Chadwick Corp. Defendants are dismissed with prejudice.

**C. Plaintiff Failed to Sufficiently Plead as to the Project Management Defendants**

Plaintiff's factual pleadings are strongest—when pieced together between complaints and inferences made—against his supervisor Jimmy Kratz. However, Plaintiff has numerous procedural issues with his pleadings. And, even in his Amended Complaint, Plaintiff fails to properly allege Counts II or III against all of the Project Management Defendants. Therefore, for the following reasons, all counts alleged against these defendants are dismissed.

*1. Count I Fails because the Project Management Defendants Are Not State Actors*

As previously discussed, Plaintiff's Amended Complaint describes in Count I that he suffered from malicious prosecution "all in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Pennsylvania State law" without specifying the elements of his claim or which defendants deprived him of these rights. Amend. Compl. at ¶ 49.

Inferring from his pleadings that Plaintiff wishes to apply *all* defendants to every count in his amended complaint, the court finds that Plaintiff must then demonstrate that *all* defendants are state actors for the purposes of Count I. While Plaintiff states that these offenses were

14

committed "under color of state law" and were violations of "clearly established and well-settled Constitutional and other legal rights" *id.* at ¶ 48, he fails to make any claims that the private citizens comprising the Project Management Defendants are state actors. The Project Management Defendants contend that a "private, non-governmental party is only liable under Section 1983 if he is 'fairly said to be a state actor.'" Proj. Mang. Def. Mot. to Dis. at 8, citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). This court agrees. Plaintiff has failed to allege without conclusory statements that any of the private individuals comprising the Project Management Defendants is a state actor under the applicable standard. Consequently, Count I is dismissed.

2. *Counts II and III Are Improperly Pled*[12]

  i. *Count II – Race Discrimination*

Plaintiff gives the most factual information in his pleadings with regard to his supervisor on the project site, Jimmy Kratz. Plaintiff demonstrates that he was a racial minority and explains that Kratz's behavior may have been intentionally motivated by race. However, Plaintiff's submissions have been convoluted and incomplete, even within the amended complaint. Namely, Plaintiff does not list Jimmy Kratz as a defendant in either of the substantive sub-sections of his briefings. When listing the parties in his first complaint, Plaintiff describes eighteen (18) defendants in his subsection concerning the "Parties and Venue." Remarkably, Kratz is not included in this list. In the Amended Complaint, Plaintiff describes six (6)

---

[12] Although the Project Management Defendants make a compelling argument that the statute of limitations has expired for Counts II and III of the petitioner's complaint, this court finds that there is no time bar to these claims. As Plaintiff notes in his response in opposition to their motion dismiss, ECF 24, circumstances permit equitable tolling. First, Plaintiff filed his writ in a timely manner in January 2020—within the two-year statute of limitations. The Project Management Defendants were listed on this writ and thus, the civil action was commenced. Additionally, the case was removed to the Eastern District of Pennsylvania during a global pandemic. As such, this court agrees with Plaintiff that Defendants were on notice and that he acted in good faith to properly and timely amend his pleadings.

15

defendants, and again, Kratz is not included on this list. The court has found no explanation as to this absence, and when held beside the numerous other deficiencies in the pleading, the allegations against Kratz are impermissibly insufficient.

Plaintiff relies heavily on inference when it comes to his claims of racial discrimination by the Project Management Defendants other than Kratz. Indeed, Plaintiff encourages the court to take liberties in assuming the intent of many the individuals. Plaintiff includes factual details that various Driscoll and Chadwick employees were told by Kratz that theft was occurring on the project site and that their actions related to this knowledge demonstrate their *intent* to discriminate against Plaintiff because of his race. The court disagrees.

In one prime example, Plaintiff discusses what he claims was an improper investigation into the copper theft. He states that the project foreman, Richard Lipinski, questioned him on the day of his termination. *See* Amend. Compl. at ¶ 30. Lipinski asked Plaintiff "if he had taken copper piping. Plaintiff said that he did take the scrap metal from the storage area because he had permission to do so from Kratz." *Id*. Then, during the police investigation "Lipinski told Officer Melissa O'Leary that Plaintiff was captured in video taking large amounts of copper from Defendant. Lipinski knew, but did not tell O'Leary that Plaintiff had permission to remove copper." *Id.* at ¶ 34. However, Plaintiff provides only a conclusion here that Lipinski (or anyone else named as a Project Management Defendant) knew that Kratz's statements were untrue. Even with this conclusion, assuming that Lipinski and others knew that the allegation was false, there is no averment or other evidence that the Project Management Defendants went along with the plan in order harm Plaintiff *because of his race.*

If the court were to take all reasonable inferences in these pleadings, it would still not be plausible from them that others, like Lipinski, *intended* to racially discriminate against Plaintiff.

In the above example, Plaintiff fails to allege that Lipinski held any racial animus toward Plaintiff. He does not describe Lipinski as having any information that Kratz was being dishonest with him about the supposed theft or that Lipinski had any contact or relationship to Plaintiff at all. The same can be said for the other references to the Project Management Defendants. Plaintiff fails to describe a relationship or direct interaction with anyone other Kratz except for the day that he is terminated. As such, the 1983 claims are facially insufficient.

> *ii. Count III – Civil Conspiracy*

For similar reasons—namely, no specific or sufficient factual allegations—the civil conspiracy claim will be dismissed against the Project Management Defendants. Plaintiff was unable to establish through his pleadings that any of the named defendants, besides his supervisor Jimmy Kratz, had a relationship or even direct contact with Plaintiff, let alone racial animus. Therefore, Plaintiff has failed to show that the Project Management Defendants conspired against him pursuant to Section 1985 civil conspiracy.

## IV. CONCLUSION

For the foregoing reasons, all claims against the City Defendants are dismissed with prejudice; all counts are dismissed with prejudice against the Chadwick Corp. Defendants; and Count I is dismissed with prejudice against the Project Management Defendants. However, Counts II and III are dismissed *without* prejudice against the Project Management Defendants. Plaintiff will have thirty (30) days to correct the deficiencies in an amended complaint.

An appropriate order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**